UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LAIAL HARB,<br><br>    Plaintiff,<br><br>v.<br><br>MARIO GIBSON LLC, et al.,<br><br>    Defendants. | Case No. 24-cv-11236<br><br>Honorable Robert J. White |

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY CASE**

Plaintiff Laial Harb sued Defendants, a chain of recreational and medical cannabis dispensaries, for failure to pay overtime compensation in violation of the Fair Labor Standards Act (FLSA), 20 U.S.C. § 201, *et seq.* (ECF No. 14, PageID.90). Harb is a former employee of Defendants. (*Id.* at PageID.92). She brought her lawsuit on behalf of herself and all putative plaintiffs. (*Id.* at PageID.88). So far, eleven other current or former employees have opted into the lawsuit (the Opt-in Plaintiffs). (*Id.* at PageID.92–93; ECF No. 54, PageID.254).[1]

---

[1] *See also* Opt-in Plaintiffs' Consent to Join Forms (ECF No. 5-1; ECF No. 13-1; ECF No. 16-1; ECF No. 23-1; ECF No. 33-1; ECF No. 35-1; ECF No. 37-1; ECF No. 38-1; ECF No. 39-1).

As part of their employment with Defendants, Harb and the Opt-in Plaintiffs signed contracts with mandatory arbitration provisions (collectively, the Arbitration Agreements). (ECF No. 54, PageID.254; ECF No. 54-2; ECF No. 54-3; ECF No. 54-4; ECF No. 54-5; ECF No. 54-6; ECF No. 54-7; ECF No. 54-8; ECF No. 54-9; ECF No. 54-10; ECF No. 54-11; ECF No. 54-12; ECF No. 54-13). Presently before the Court is Defendants' motion to compel arbitration based on the Arbitration Agreements. (ECF No. 54). For the reasons that follow, the Court will grant Defendants' motion.

## I. Background

Harb filed her initial complaint on May 9, 2024, (ECF No. 1), and her amended complaint on June 10, 2024, (ECF No. 14). The amended complaint asserted a single count against Defendants for a violation of the FLSA. (*Id.* at PageID.105). According to Harb, Defendants failed to pay overtime as required by the statute. (*Id.* at PageID.106). Defendants answered the amended complaint on August 12, 2024. (ECF No. 40). The answer neglected to raise the Arbitration Agreements as an affirmative defense.

Shortly thereafter, on August 28, 2024, the Court entered the parties' stipulation to stay the case pending mediation. (ECF No. 42, PageID.201).[2] On

---

[2] The parties also appeared before the Court for a status conference on August 28, 2024. (ECF No. 41). To date, the parties have appeared for status conferences before

2

November 8, 2024, the Court, upon the parties' stipulation, extended the stay until February 28, 2025. (ECF No. 45, PageID.213). While the case was stayed, Defendants provided Harb's counsel with information regarding the Opt-in Plaintiffs; after some back-and-forth, Defendants hired a third-party expert to extract and analyze additional data for Harb so as to facilitate mediation. (*Id*. at PageID.212–13).

After the stay lifted, Defendants' counsel notified Harb's counsel of the Arbitration Agreements and asked Harb to voluntarily move the lawsuit to arbitration. (ECF No. 54, PageID.255). Harb declined. (*Id*.). On March 24, 2025, Defendants filed an amended answer that included as an affirmative defense the parties' duty to arbitrate per the mandatory Arbitration Agreements. (ECF No. 52, PageID.245). Four days later, Defendants moved to compel arbitration. (ECF No. 54). The Court held a hearing on Defendants' motion on May 29, 2025. (ECF No. 61).

## II. Legal Standard

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq*., allows a party to move to compel arbitration in the event of another party's "failure, neglect, or refusal . . . to arbitrate under a written agreement for arbitration." *Id*. at § 4.

---

the Court four times, on the following dates: August 28, 2024; March 24, 2025; April 22, 2025; and June 9, 2025. (*Id*.; ECF No. 49; ECF No. 53; ECF No. 62).

3

Generally, the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citation omitted). It "'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Id.* at 21–22 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

When a party moves to compel arbitration, a court must determine as a threshold matter: (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) "if federal statutory claims are asserted . . . whether Congress intended those claims to be nonarbitrable"; and (4) if only some of the claims are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). But even if a court decides that an arbitration provision is enforceable, a party could still waive the right to arbitrate. *Schwebke v. United Wholesale Mtg. LLC*, 96 F.4th 971, 977 (6th Cir. 2024); *see also In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 715 F. Supp. 3d 1003, 1006 (E.D. Mich. 2024).

**III. Analysis**

Defendants moved to compel arbitration on the basis that the Arbitration Agreements are valid and enforceable and cover the dispute at issue. (ECF No. 54,

4

PageID.254). And although Defendants raised arbitration months after Harb filed her initial complaint, (ECF No. 56, PageID.334), Defendants claimed that they did not waive the right to arbitrate (ECF No. 54, PageID.256–57). According to Defendants, because they have engaged almost exclusively in early settlement activities thus far, and not litigation, they did not act in a manner inconsistent with the Arbitration Agreements. (*Id.* at PageID.278–80).

Harb did not challenge the validity of the Arbitration Agreements or their scope. Instead, Harb responded that Defendants waived the right to arbitrate altogether by waiting too long to move to compel, or even address the Arbitration Agreements in the first instance. (ECF No. 56, PageID.325, 334). As a result, Harb asked the Court to deny Defendants' motion, and if not, to stay the case pending the outcome of arbitration as opposed to ordering dismissal. (*Id.* at PageID.342).

As explained below, after reviewing the parties' briefs and accompanying exhibits, the Court finds that the Arbitration Agreements are valid and enforceable, and that Defendants did not waive the right to arbitrate. The Court will therefore grant Defendants' motion. In doing so, the Court will stay the case pending the outcome of arbitration.

    **A.**    **The Arbitration Agreements Are Valid and Enforceable and Cover the Dispute at Issue.**

As mentioned, Harb did not challenge the validity of the Arbitration Agreements, nor did Harb contest that the Arbitration Agreements applied to the

FLSA claim. And based on the factors set forth by the Sixth Circuit, the Court agrees with Defendants that, as a threshold matter, the Arbitration Agreements are binding and the FLSA claim falls within their scope. *See McGee*, 941 F.3d at 865 (outlining arbitrability factors).

First, the Court finds that the Arbitration Agreements are enforceable. "Because arbitration agreements are fundamentally contracts, [courts] review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). In Michigan, "[a] valid contract requires: "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Barclae v. Zarb*, 300 Mich. App. 455, 471 (2013).

Here, the Arbitration Agreements satisfy the elements of a valid contract. Harb and the Opt-in Plaintiffs are adults and therefore competent to contract. (ECF No. 54, PageID.271). Because FLSA claims are arbitrable, the subject matter is proper. *Thomas v. Right Choice Staffing Grp., LLC*, No. 15-10055, 2015 WL 4078173, at *4 (E.D. Mich. July 6, 2015) ("The Sixth Circuit has concluded that FLSA claims are arbitrable.") (citing *Floss v. Ryan's Family Steak House, Inc.*, 211 F.3d 306 (6th Cir. 2000)). In exchange for employment, Harb and the Opt-in Plaintiffs consented to arbitrate any controversy or claim arising out of or relating to

6

their employment with Defendants, (ECF No. 54-2; ECF No. 54-3; ECF No. 54-4; ECF No. 54-5; ECF No. 54-6; ECF No. 54-7; ECF No. 54-8; ECF No. 54-9; ECF No. 54-10; ECF No. 54-11; ECF No. 54-12; ECF No. 54-13). *See Yoches v. City of Dearborn*, 320 Mich. App. 461, 480 (2017) (defining consideration as "some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other") (citation omitted) (cleaned up). And both parties are mutually obligated to arbitrate agreements under the contracts.

Second, the FLSA claim for unpaid overtime falls within the scope of the Arbitration Agreements. "[B]roadly written arbitration clauses must be taken at their word and extend to situations that fall within their purview." *Watson v. Wyatt & Co. v. SBS Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008). Harb, and ten of the eleven Opt-in Plaintiffs, signed identical arbitration agreements that provide: "<u>ANY</u> controversy or claim arising out of or relating to your employment with, or application for employment with, [Defendants] shall be settled by arbitration." (ECF No. 54-2; ECF No. 54-3; ECF No. 54-4; ECF No. 54-5; ECF No. 54-6; ECF No. 54-7; ECF No. 54-8; ECF No. 54-9; ECF No. 54-10; ECF No. 54-11; ECF No. 54-12). Although one of the Opt-in Plaintiffs signed a different arbitration agreement, it still states: "Any dispute, controversy, or claim arising out of, relating to or in connection with this Agreement brought by Employee . . . shall be resolved by final and binding

7

arbitration." (ECF No. 54-13, PageID.315).  Because disputes related to unpaid overtime necessarily arise from Harb's and the Opt-in Plaintiffs' employment with Defendants, the Arbitration Agreements as a whole extend to such disputes.

Third, "[m]andatory arbitration agreements in the employment context are governed by the Federal Arbitration Act," *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009), and FLSA claims are arbitrable. *Thomas*, 2015 WL 4078173, at *4.  Whether Congress intended Harb's claim to be non-arbitrable is therefore not at issue.  Fourth, Harb asserted only one claim under the FLSA, which is subject to arbitration.  The Court need not decide, then, whether to stay proceedings for non-arbitrable claims.  Because the Arbitration Agreements meet the threshold arbitrability requirements set forth by the Sixth Circuit, the Court finds that they mandate arbitration of Harb's and the Opt-in Plaintiffs' FLSA claim.

   **B.**  **Defendants Did Not Waive the Arbitration Agreements.**

Even if the Arbitration Agreements are enforceable, Harb alleged that Defendants waived the right to arbitrate by failing to raise or move to compel arbitration until nine months into the litigation. (ECF No. 56, PageID.325). Defendants responded that the amount of time between the initial complaint and the motion to compel arbitration is mitigated by the lack of litigation that occurred during that period. (ECF No. 57, PageID.1116–18).

8

"Waiver . . . 'is the intentional relinquishment or abandonment of a known right.'" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right." *Morgan*, 596 U.S. at 417. In the context of arbitration, courts in the Sixth Circuit historically found waiver where (1) the movant's actions were "completely inconsistent with any reliance on an arbitration agreement" and (2) the delay in raising arbitration caused the non-movant "actual prejudice." *Schwebke*, 96 F.4th at 974 (citation omitted).

After the Supreme Court's decision in *Morgan*, however, courts can no longer factor in prejudice suffered by the non-movant to waiver analyses. *Id.*; *see also Morgan*, 596 U.S. at 417. But, at present, it is unclear whether the "completely inconsistent" standard still applies post-*Morgan*. Neither the Supreme Court nor the Sixth Circuit has conclusively decided the issue. Rather, in *Schwebke*, a post-*Morgan* case, the Sixth Circuit "assume[d] without deciding" that the standard and case law applying it "remain[ed] intact." 96 F.4th at 974–75. In doing so, the Sixth Circuit relied on pre-*Morgan* case law interpreting the completely inconsistent standard to decide whether waiver occurred. *Id.* at 975–77.

In opinions that applied the completely inconsistent standard, the waiver outcome depended on the "totality of the circumstances – not on any bright-line rule." *Id.* at 976. Actions that constituted waiver therefore varied. For example, in

9

*Chrysler*, the defendant waived the right to arbitrate because "the defendant's initial approach to the litigation focuse[d] on the merits" and "the demand for arbitration [was] not presented until months later." *Id.* at 1007. Namely, by filing a motion to dismiss challenging the merits of claims, defendant acted in a manner "plainly inconsistent" with the arbitration agreement. *Id.* at 1004.

Courts also faulted parties who engaged in extensive discovery before moving to compel arbitration, such as in *Johnson Associates Corporation v. HL Operating Corporation*, 680 F.3d 713 (6th Cir. 2012). The *Johnson* defendant waived the right to arbitrate by "actively schedul[ing] and request[ing] discovery, including depositions" following the end of formal settlement discussions. *Id.* at 718–19. Not surprisingly, parties who complete or nearly complete discovery likely waive arbitration rights. *Schwebke*, 96 F.4th at 975. Beyond discovery-related acts, a party's failure to raise arbitration as an affirmative defense could contribute to a finding of waiver. *Id.* at 718.

Here, Harb, relying on the completely inconsistent standard, claimed in her response brief that Defendants waived the right to arbitrate by engaging in the following activities: (1) seeking an extension of time to answer the complaint; (2) filing an answer that asserted 25 affirmative defenses but did not include the right to arbitration; (3) participating in status conferences with the Court and not raising the Arbitration Agreement; (4) stipulating to stay the case pending the outcome of

10

mediation; (5) producing limited discovery in contemplation of mediation; (6) jointly moving to adjust case deadlines; and (7) engaging in written and telephonic communications without referencing the Arbitration Agreements. (ECF No. 56, PageID.338–39). All of this, coupled with Defendants' failure to raise the Arbitration Agreements until around the nine-to-ten-month mark of the case, warranted denial of Defendants' motion. (*Id.* at PageID.339).

But based on this list, the Court does not find that Defendants acted inconsistently with their right to arbitrate. To begin, the parties stipulated to the stay the case pending mediation from August 28, 2024 to February 28, 2025. (ECF No. 42; ECF No. 45). That is, the parties mutually agreed to press pause on the litigation so that they could resolve the case. Defendants' failure to raise arbitration during the stay, then, does not indicate an intent to relinquish their rights, especially considering that courts are "reluctant to infer waiver based on settlement-related activities." *Schwebke*, 96 F.4th at 976.

Likewise, any discovery Defendants produced was done so at Harb's behest as part of a good faith effort to facilitate mediation. (ECF No. 45, PageID.212). Unlike *Johnson*, Defendants intended any discovery exchanged prior to the stay lifting to serve settlement purposes, and the Court will not infer waiver from mediation-related discovery. And, pursuant to the parties' stipulated protective order, if the parties exchange discovery now, they do so under the express condition

11

that Defendants' right to compel arbitration is not waived. (ECF No. 60, PageID.1152) ("No production made pursuant to this Order and this Order itself shall not be construed to waive Defendants' rights to seek to compel arbitration or otherwise impair Defendants' pending Motion to Compel Arbitration (ECF No. 54)."). Similarly, Harb's waiver argument is undermined by the fact that Defendants filed no dispositive motions and made no effort to adjudicate the case on the merits. Thus, the Court does not find that Defendants waived the right to arbitrate under the completely inconsistent standard.

At oral argument, however, Harb's counsel took a different position than the position articulated in the response brief. Harb's counsel asserted, for the first time, that the Sixth Circuit's "completely inconsistent" with reliance on arbitration standard no longer applied post-*Morgan*. As a result, counsel argued, after *Morgan*, courts could only analyze whether a party intentionally relinquished its rights under a traditional waiver analysis. Under this reading, instead of considering all of the reasons a party may have acted inconsistently with their rights, the fact that a party failed to raise arbitration as an affirmative defense in an initial pleading is alone sufficient to find waiver. That is, a party relinquishes its rights by not raising them in the first responsive pleading. As applied here, because Defendants knew that the contracts contained the Arbitration Agreements, Defendants failure to raise them in the initial answer amounted to waiver.

12

But the Court does not find that the traditional waiver analysis commands the harsh result Harb suggested. To hold otherwise would be antithetical to the liberal pleading standards set forth by the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend pleadings should be "freely give[n] . . . when justice so requires." Given this rule, Defendants' omission of the Arbitration Agreements from their initial answer did not foreclose Defendants from ever amending their answer to include them. And, notably, Defendants promptly amended their answer after the stay lifted, with Harb's consent, to assert the Arbitration Agreements as an affirmative defense. (ECF No. 51, PageID.234–35; ECF No. 52, PageID.245). Because the amended answer now functions as the operative pleading, its affirmative defenses control.

And ultimately, whether Defendants intentionally relinquished their known right asks essentially the same question as whether Defendants acted inconsistently with their right to arbitrate. Under both tests, the Court considers what Defendants did or did not do in connection with their right to arbitrate. Based on this, the Court still finds its analysis under the pre-*Morgan* case law applicable, given that the "completely inconsistent" standard focuses on Defendants' actions in relation to the right.

Since the case commenced, the parties have spent a majority of the time working toward a settlement. To the extent the Defendants litigated the case, their

13

actions consisted of seeking deadline extensions, participating in four status conferences with the Court (at least two included discussions of the Arbitration Agreements), engaging in written and telephonic communications with Harb and the Opt-in Plaintiffs, and filing responsive pleadings.  As explained above, such actions do not support a finding of waiver.

Finally, Harb requested the Court stay the case pending the outcome of arbitration pursuant to 9 U.S.C. § 3.  Under § 3, the Court is required to grant the stay so long as the issue is arbitrable, one of the parties applied for a stay, and "the applicant for the stay is not in default in proceeding with such arbitration." *Id.*; *see also Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) (noting a court "does not have discretion to dismiss [a] suit on the basis that all the claims are subject to arbitration" if a party has requested a stay).  Because the Court finds that the case and parties meet the statute's criteria, it will stay the case pending arbitration.  Accordingly,

IT IS ORDERED that the motion to compel arbitration (ECF No. 54) is GRANTED.

IT IS FURTHER ORDERED that the case is STAYED pending the outcome of arbitration.

Dated: June 18, 2025            s/Robert J. White
                                             Robert J. White
                                             United States District Judge